No. 22-4057

# In the United States Court of Appeals for the Tenth Circuit

IN RE: OFFICE OF THE UTAH ATTORNEY GENERAL
AND UTAH ATTORNEY GENERAL SEAN REYES, PETITIONERS.

On Petition for Writ of Mandamus to the United States District Court
for the District of Utah
No. 2:18-cv-00341-JNP-DAO

**BRIEF FOR THE STATES OF TEXAS, ALABAMA, ALASKA, ARKANSAS, COLORADO, FLORIDA, IDAHO, INDIANA, KANSAS, KENTUCKY, LOUISIANA, MISSISSIPPI, NEW MEXICO, OHIO, OKLAHOMA, SOUTH CAROLINA, VIRGINIA, AND WEST VIRGINIA AS AMICI CURIAE IN SUPPORT OF PETITIONERS**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General

ARI CUENIN
Deputy Solicitor General

KYLE D. HIGHFUL
Assistant Solicitor General
Kyle.Highful@oag.texas.gov

Counsel for Amici Curiae

[Additional counsel listed at end of brief]

# Table of Contents

Page

Table of Authorities ...................................................................... ii

Statement of Interest of Amici Curiae .................................... 1

Introduction ................................................................................. 1

Summary of the Argument ......................................................... 2

Argument ...................................................................................... 3

    I.   The District Court Abused Its Discretion in Granting the Motion to Compel. ............................................................................ 3

        A.  The district court applied the wrong standard. .................................. 3

            1.  Depositions of high-ranking officials raise separation-of-powers and federalism concerns. ................................. 4

            2.  Depositions of high-ranking officials waste public resources......... 5

            3.  Federal and state courts around the country have required extraordinary circumstances for deposing top officials. ............... 7

            4.  The district court's reasons for rejecting a heightened standard are unpersuasive. .......................................... 10

        B.  The evidence cited by the district court does not show extraordinary circumstances. ........................................... 12

    II.  Mandamus Is the Proper Remedy. .................................... 15

Conclusion .................................................................................. 16

Certificate of Service ................................................................. 18

Certificate of Compliance ........................................................ 18

i

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Alberto v. Toyota Motor Corp.*,
796 N.W.2d 490 (Mich. Ct. App. 2010) ..........................................1, 8

*In re Am. Airlines, Inc.*,
634 S.W.3d 38 (Tex. 2021) ................................................ 8

*In re Amend. to Fla. Rule of Civ. Proc. 1.280*,
324 So. 3d 459 (Fla. 2021) ................................................ 8

*Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*,
No. 2:11-CV-02101-SHM, 2012 WL 6607288 (W.D. Tenn.
Dec. 18, 2012) ............................................................ 11

*Bogan v. City of Boston*,
489 F.3d 417 (1st Cir. 2007) ........................................ 6, 8

*Bond v. United States*,
564 U.S. 211 (2011) ..................................................... 5

*CBS Corp. v. FCC*,
785 F.3d 699 (D.C. Cir. 2015) ........................................ 12

*In re Cheney*,
544 F.3d 311 (D.C. Cir. 2008) ..................................... 4, 8

*Clarke v. State Att'y Gen.'s Off.*,
138 P.3d 144 (Wash. Ct. App. 2006) ................................. 8

*Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
96 F.R.D. 619 (D.D.C. 1983) ......................................... 6

*In re FDIC*,
58 F.3d 1055 (5th Cir. 1995) ..................................... 8, 14

*Franklin Sav. Ass'n v. Ryan*,
922 F.2d 209 (4th Cir. 1991) ........................................ 8

*In re Gee*,
941 F.3d 153 (5th Cir. 2019) ..................................... 4, 11

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) ............................................... 5, 11

*Harrington v. Richter*,
562 U.S. 86 (2011) ............................................... 5, 12

ii

*Hyland v. Smollok*,
   349 A.2d 541 (N.J. Super. Ct. App. Div. 1975) .................................................... 8

*Lederman v. N.Y.C. Dep't of Parks & Recreation*,
   731 F.3d 199 (2d Cir. 2013) ............................................................................. 8

*Liberty Mut. Ins. Co. v. Superior Ct.*,
   13 Cal. Rptr. 2d 363 (Cal. Ct. App. 1992) ........................................................ 3

*In re Lombardi*,
   741 F.3d 888 (8th Cir. 2014) .......................................................................... 11

*Monti v. State*,
   563 A.2d 629 (Vt. 1989) ............................................................................. 6, 8

*Morgan v. United States*,
   304 U.S. 1 (1938) ........................................................................................... 8

*Nueces County v. De Pena*,
   953 S.W.2d 835 (Tex. App.—Corpus Christi–Edinburg 1997, orig.
   proceeding) .................................................................................................... 8

*Ross v. Superior Ct. of Riverside Cnty.*,
   292 Cal. Rptr. 3d 663 (Cal. Ct. App. 2022) ...................................................... 8

*State ex rel. Mass. Mut. Life Ins. Co. v. Sanders*,
   724 S.E.2d 353 (W. Va. 2012) ..................................................................... 8, 9

*State ex rel. Paige v. Canady*,
   475 S.E.2d 154 (W. Va. 1996) ........................................................................ 9

*In re SEC ex rel. Glotzer*,
   374 F.3d 184 (2d Cir. 2004) .......................................................................... 15

*Shinn v. Ramirez*,
   142 S. Ct. 1718 (2022) ............................................................................. 5, 10

*State v. Thompson*,
   810 P.2d 415 (Utah 1991) .............................................................................. 5

*Thomas v. Int'l Bus. Machs.*,
   48 F.3d 478 (10th Cir. 1995) .......................................................................... 9

*In re U.S. Dep't of Educ.*,
   25 F.4th 692 (9th Cir. 2022) ............................................................ 6, 7, 12, 13

*U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*,
   140 S. Ct. 1837 (2020) ................................................................................. 11

*In re U.S.*,
   197 F.3d 310 (8th Cir. 1999) ................................................................ 7, 8, 13

iii

*In re U.S.*,
    542 F. App'x 944 (Fed. Cir. 2013) ...................................................... 8

*In re U.S.*,
    985 F.2d 510 (11th Cir. 1993) ................................................. 4, 5, 15

*In re USA*,
    624 F.3d 1368 (11th Cir. 2010) .......................................................... 4, 8

*United States v. Berry*,
    911 F.3d 354 (6th Cir. 2018) .............................................................. 12

*United States v. Morgan*,
    313 U.S. 409 (1941) ........................................................................ 7, 8

**Rule:**

Fla. R. Civ. P. 1.280(h) ........................................................................ 9

**Other Authorities:**

A. Darby Dickerson, *Deposition Dilemmas: Vexatious Scheduling and*
    *Errata Sheets*, 12 Geo. J. Legal Ethics 1 (1998) ........................... 3

Fern L. Kletter, Annotation, *Deposition of High-Ranking Government*
    *Officials*, 15 A.L.R. Fed. 3d Art. 5, § 2 (2016) ........................... 7, 8

Scott A. Mager & Elaine J. LaFlamme, *At the "Apex" of the Problem:*
    *Stopping the Abuse of Requests for Depositions of High Ranking*
    *"Apex" Executives*, 23 No. 3 Trial Advoc. Q. 19 (2004) ...................... 3

Office of the Attorney General of Texas,
    https://www.texasattorneygeneral.gov.................................................. 7

Office of the Attorney General of Texas, Human Trafficking Initiative,
    https://www.texasattorneygeneral.gov/initiatives/human-trafficking .............. 7

Office of the Attorney General of Texas, Cyber Safety,
    https://www.texasattorneygeneral.gov/initiatives/cyber-safety ....................... 7

Utah Opioid Task Force, https://tinyurl.com/utahagoopioid .................................. 6

Utah Trafficking in Persons Task Force,
    https://tinyurl.com/utahagoht ........................................................... 6

Utah Office of the Attorney General, Mission & Priorities,
    https://tinyurl.com/utahagomission .................................................... 6

## Statement of Interest of Amici Curiae

Amici States have an interest in protecting their senior officials from unnecessary and burdensome depositions. "Courts have reasoned that giving depositions on a regular basis would impede high-ranking governmental officials in the performance of their duties, and thus contravene the public interest." *Alberto v. Toyota Motor Corp.*, 796 N.W.2d 490, 493 (Mich. Ct. App. 2010). This proceeding asks the Court to determine the appropriate standard federal courts should apply when deciding whether to order the deposition of a high-ranking state official and therefore implicates Amici States' common interest.[1]

## Introduction

High-ranking government officials should rarely be subject to deposition. Unnecessarily requiring busy officials to prepare for and attend depositions takes them away from their duties and hurts the public they serve. That is why state and federal courts around the country have applied an exacting standard when deciding whether to compel a high-ranking official to be deposed. The district court rejected that standard. And it ordered the Utah Attorney General to be deposed for hours concerning an employment dispute, even though the court acknowledged that General Reyes may have "little knowledge" concerning the circumstances of the plaintiff's termination. Doc. 251 at 13. That abuse of discretion endangers both federal-state comity and the people of Utah, whose attorney general is being diverted from his

---

[1] No counsel for any party authored this brief, in whole or in part, and no person or entity other than amici contributed monetarily to its preparation or submission.

public service to answer the plaintiff's questions. This Court should adopt the standard applied by other circuits and grant the petition for writ of mandamus.

## Summary of the Argument

**I.**    The district court's order compelling General Reyes's deposition was an abuse of discretion. *First*, the court refused to apply the proper standard in determining whether to grant the motion to compel. As federal and state courts around the county have recognized, court-ordered depositions of high-ranking executive officials implicate separation-of-powers and federalism concerns, and they detract from the official's ability to serve the public. *Second*, the facts recited in the district court's opinion do not show that the plaintiff has met his burden under the appropriate standard. The district court failed to point to extraordinary circumstances in this employment dispute justifying an oral deposition of Utah's top law-enforcement officer.

**II.**    The proper remedy for the district court's abuse of discretion is mandamus. Requiring General Reyes to disregard the court's order and place himself in contempt before challenging the order in federal court would further burden federal-state relations and divert more of the attorney general's attention from his duties. This Court should grant mandamus relief now rather than further extend this discovery dispute.

# ARGUMENT

## I.  The District Court Abused Its Discretion in Granting the Motion to Compel.

Ordering an executive official to sit for deposition can strain relations between branches of government and between the States and the federal government. At a minimum, it consumes the official's attention and takes him away from serving the public. Yet the district court below failed to apply the heightened standard adopted by many courts across the country. And the evidence the court pointed to does not justify a federal court ordering Utah's attorney general to submit to an hours-long oral deposition. The district court's order was an abuse of discretion.

### A.  The district court applied the wrong standard.

"Depositions are an extensively used and rampantly abused discovery tool." A. Darby Dickerson, *Deposition Dilemmas: Vexatious Scheduling and Errata Sheets*, 12 Geo. J. Legal Ethics 1, 1 (1998). Depositions of high-ranking government or corporate officials "raise tremendous potential for discovery abuse and harassment." Scott A. Mager & Elaine J. LaFlamme, *At the "Apex" of the Problem: Stopping the Abuse of Requests for Depositions of High Ranking "Apex" Executives*, 23 No. 3 Trial Advoc. Q. 19, 19 (2004); *accord Liberty Mut. Ins. Co. v. Superior Ct.*, 13 Cal. Rptr. 2d 363, 366 (Cal. Ct. App. 1992). And compelled depositions of high-ranking executive-branch officials raise separation-of-powers and federalism concerns and harm the public by taking the official away from his duties. That is why courts around the country have required parties to meet a stringent standard before compelling high-level

government officials to be deposed. The district court erred in setting the bar much lower.

### 1. Depositions of high-ranking officials raise separation-of-powers and federalism concerns.

Involuntary depositions of top executive-branch officials implicate both the separation of powers and federal-state comity.

*First*, "the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers" between the judicial and executive branches of government. *In re USA*, 624 F.3d 1368, 1372 (11th Cir. 2010). The judicial branch impinges on the dignity of the executive branch when it forces an official to choose between submitting to the subpoena or placing himself in contempt of court. *See In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam). The risk of the judicial branch affronting the executive branch is particularly acute whenever a trial-court judge (who stands on the first rung of the judicial ladder) issues a command to an official near the apex of executive power. In addition, a subpoena burdens the executive official by forcing him to spend time away from his duties to prepare for and attend the deposition. *See In re USA*, 624 F.3d at 1372; *see also infra*, Part I.A.2. "The duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere." *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (per curiam).

*Second*, the compelled deposition of a high-ranking state official by a federal court raises federalism concerns. *See In re Gee*, 941 F.3d 153, 168-69 (5th Cir. 2019) (per curiam). The balance of power between the States and the federal government

4

is just as important as the balance of power between coordinate branches within a government. *See Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). "The allocation of powers in our federal system preserves the integrity, dignity, and residual sovereignty of the States." *Bond v. United States*, 564 U.S. 211, 221 (2011). A single federal district-court judge ordering a high-ranking state official to submit to deposition is a slight to state sovereignty. That is especially true when, as here, the official to be deposed is "the state's highest law enforcement officer." *State v. Thompson*, 810 P.2d 415, 420 (Utah 1991). It would be incommensurate with the dignity and responsibilities of his office for General Reyes to be required to sit for hours answering questions on topics such as his relationship with his father or his marital history. *See* Mandamus Pet. at 33-34 (describing previous deposition inquiries by this plaintiff's counsel). Just as federal courts should use the writ of habeas corpus only to "guard against extreme malfunctions in the state criminal justice systems," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), because federal habeas review "intrudes on state sovereignty" and "imposes special costs on our federal system," *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022), so too should federal courts order a high-ranking state official to be deposed only under extraordinary circumstances when no other option is available.

### 2.    Depositions of high-ranking officials waste public resources.

"High ranking government officials have greater duties and time constraints than other witnesses," and their "time is very valuable." *In re U.S.*, 985 F.2d at 512. "[P]ublic policy requires that the time and energies of public officials be conserved

for the public's business to as great an extent as may be consistent with the ends of justice in particular cases." *Monti v. State*, 563 A.2d 629, 631 (Vt. 1989) (quoting *Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983)). "[W]ithout appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007). "In short, the executive branch's execution of the laws can be crippled if courts can unnecessarily burden [officials] with compelled depositions." *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022).

These concerns are heightened when the involuntary deposition will disrupt the operations of a State's highest law-enforcement officer. The Utah Office of the Attorney General works "to keep citizens, especially children, safe from violent crimes, domestic abuse, and predatory crimes." https://tinyurl.com/utahagomission (all websites last visited July 5, 2022). Among other initiatives, General Reyes's office operates the Utah Trafficking in Persons Task Force, https://tinyurl.com/utahagoht, and the Utah Opioid Task Force, https://tinyurl.com/utahagoopioid. Those initiatives are in addition to providing legal services to "nearly 60 state agencies, boards, and commissions, colleges, and universities, as well as the Governor and the Legislature." https://tinyurl.com/utahagomission. To pursue those critical missions, General Reyes oversees an agency with more than 500 members. *Id.* His hands are full.

And the same is true of attorneys general across the country. *See* https://www.naag.org/issues/powers-and-duties (describing the extensive duties of

state attorneys general). The Attorney General of Texas, for example, leads more than 4,000 employees (including nearly 750 attorneys) serving in 117 offices. https://www.texasattorneygeneral.gov. Like the Utah Attorney General, the Texas Attorney General confronts issues of critical importance to the people of his State, including human trafficking, https://www.texasattorneygeneral.gov/initiatives/human-trafficking, and online child exploitation, https://www.texasattorneygeneral.gov/initiatives/cyber-safety. Given the scale and importance of the work conducted by state attorneys general and their offices, a federal court should not interrupt their duties unless doing so is "absolutely essential to the case." *In re U.S. Dep't of Educ.*, 25 F.4th at 703 n.3.

### 3. Federal and state courts around the country have required extraordinary circumstances for deposing top officials.

Given these grave concerns, it is unsurprising that "[t]he vast majority of courts place a high bar before allowing a party to depose a high-level official, requiring a showing of extraordinary, compelling, or exceptional circumstances necessitating the deposition." Fern L. Kletter, Annotation, *Deposition of High-Ranking Government Officials*, 15 A.L.R. Fed. 3d Art. 5, § 2 (2016) (collecting cases). "[T]he seminal authority on the deposition of cabinet secretaries and other high-ranking government officials" is *United States v. Morgan*, 313 U.S. 409 (1941). *In re U.S. Dep't of Educ.*, 25 F.4th at 700; *see In re U.S.*, 197 F.3d 310, 313 (8th Cir. 1999) (noting that "[t]he need for controlling the use of subpoenas against high government officials was recognized by the Supreme Court" in *Morgan*). In *Morgan*, the district court ordered the deposition of the U.S. Secretary of Agriculture. 313 U.S. at 421-22. The Supreme

7

Court explained that the deposition was improper because "it was not the function of the court to probe the mental processes of the Secretary." *Id.* at 422 (quoting *Morgan v. United States*, 304 U.S. 1, 18 (1938)). The Court further explained that the deposition showed disrespect by the judiciary for the executive branch's administrative process. *Id.*

Following *Morgan*, many courts have adopted an especially stringent standard for deposing a high-ranking government official, and courts often impose a similar standard for deposing a high-level corporate executive. Indeed, the case law applying a heightened standard for deposing top government or corporate officials is extensive.[2]

Texas courts, for example, have applied a heightened standard for deposing high-level corporate officials, *In re Am. Airlines, Inc.*, 634 S.W.3d 38, 40 (Tex. 2021) (per curiam) (orig. proceeding), and county judges, *Nueces County v. De Pena*, 953 S.W.2d 835, 837 (Tex. App.—Corpus Christi–Edinburg 1997, orig. proceeding).

---

[2] *See, e.g.*, *In re U.S.*, 542 F. App'x 944, 948 (Fed. Cir. 2013); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013); *In re USA*, 624 F.3d at 1372; *In re Cheney*, 544 F.3d at 314; *Bogan*, 489 F.3d at 423; *In re U.S.*, 197 F.3d at 313-14; *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Ross v. Superior Ct. of Riverside Cnty.*, 292 Cal. Rptr. 3d 663, 672 (Cal. Ct. App. 2022); *In re Amend. to Fla. Rule of Civ. Proc. 1.280*, 324 So. 3d 459, 461 (Fla. 2021); *State ex rel. Mass. Mut. Life Ins. Co. v. Sanders*, 724 S.E.2d 353, 364 (W. Va. 2012); *Alberto*, 796 N.W.2d at 494; *Clarke v. State Att'y Gen.'s Off.*, 138 P.3d 144, 151 (Wash. Ct. App. 2006); *Monti*, 563 A.2d at 630-32; *Hyland v. Smollok*, 349 A.2d 541, 543 (N.J. Super. Ct. App. Div. 1975) (per curiam); Kletter, *supra*.

West Virginia applies a higher standard for deposing both high-ranking government officials, *State ex rel. Paige v. Canady*, 475 S.E.2d 154, 161 (W. Va. 1996), and high-ranking corporate officials, *Sanders*, 724 S.E.2d at 364. And Florida has codified its heightened standard in a rule of civil procedure. Fla. R. Civ. P. 1.280(h) ("Apex Doctrine"). There is broad consensus that high-level officials are entitled to special protection from involuntary depositions.

Although this Court has not directly addressed the standard for deposing a high-ranking government official, it affirmed a protective order prohibiting the deposition of a corporate chairman in *Thomas v. International Business Machines*, 48 F.3d 478 (10th Cir. 1995). There, the plaintiff worked under a direct supervisor, who in turn reported to a branch operations manager. *Id.* at 481. Yet the plaintiff sought to leap-frog the chain of command and depose the chairman of IBM's board of directors. *Id.* In affirming the protective order, this Court noted, among other things, that "[n]othing in the record indicates that IBM did not make available for deposition [the plaintiff's] direct supervisors, who conducted the performance evaluations and ranking." *Id.* at 483. It further noted that the deposition would interfere with the chairman's duty "to attend previously scheduled meetings with IBM senior management." *Id.* The Court's consideration of these factors reflects the same intuition that the courts mentioned above have discussed in more detail—a high-ranking official should not be burdened with an involuntary and unnecessary deposition.

9

### 4. The district court's reasons for rejecting a heightened standard are unpersuasive.

State and federal courts have recognized the harm created by the involuntary depositions of high-ranking officials and have set high bars for those depositions. And the risk of harm nears its apex in a situation like this one, where a federal judge has ordered a State's attorney general to submit to hours of deposition over an employment dispute. The circumstances here call for exacting requirements. Yet the district court rejected an "'exceptional' or 'extraordinary' circumstances test." Doc. 251 at 6. The district court's reasoning is out of step with the circuit courts that have considered this issue. And the reasons the court gave do not justify its decision to set a lower bar.

*First*, the court pointed out that this case does not "involve[] high-ranking *federal* officials" or other circumstances that would raise "legitimate separation-of-powers concerns" involving "co-equal branch[es] of the federal government." *Id.* at 5. But this case *does* involve a federal court's intrusion on matters of *state* governance, which raises grave sovereignty and federalism concerns. The Supreme Court's recent decisions have echoed the need to carefully police federal intrusion on state prerogatives to avoid upsetting the balance of federalism. For example, the Supreme Court has recognized that federal habeas review must accord state-court judgments "the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Ramirez*, 142 S. Ct. at 1737. The Court has also required "Congress to enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power and the power of the Government

10

over private property." *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S. Ct. 1837, 1849-50 (2020).

The district court, however, almost entirely ignored the implications for the balance of power between the States and the federal government raised by a single federal district-court judge ordering a State's chief law-enforcement officer to be deposed. *See In re Gee*, 941 F.3d at 168-69; *In re Lombardi*, 741 F.3d 888, 896-97 (8th Cir. 2014) (en banc) (granting mandamus relief from a district court's discovery orders that would require the disclosure of sensitive state information); *see also supra*, Part I.A.1. In a footnote, the court merely cited another district court's opinion minimizing federalism concerns. Doc. 251 at 6 n.6 (citing *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, No. 2:11-CV-02101-SHM, 2012 WL 6607288, at *3 (W.D. Tenn. Dec. 18, 2012)). But as the Supreme Court's more recent decisions illustrate, courts may not sweep federalism concerns aside. "In the tension between federal and state power lies the promise of liberty." *Gregory*, 501 U.S. at 459.

*Second*, the court concluded that the risk of monopolizing General Reyes's time is minimal here because this case involves "an employment matter" and "is likely to be an isolated case." Doc. 251 at 6. The opposite is true. State agencies as large as the Utah Office of the Attorney General regularly face employment disputes. Requiring a state attorney general to face an hours-long deposition for every employment dispute—or even every dispute of which he has personal knowledge—would be an unacceptable distraction from the attorney general's official duties.

11

*Third*, the court apparently considered the "stringent standard" set by other courts to be unworkable. *Id.* at 7. The court noted the difficulties in showing that deposing a high-ranking government official is "absolutely needed." *Id.* at 7-9. But those difficulties did not deter the Ninth Circuit from requiring a party to show necessity before deposing a high-ranking government official. *In re U.S. Dep't of Educ.*, 25 F.4th at 703. In addition, courts apply an absolute-necessity requirement in other contexts. For example, a criminal defendant may be administered antipsychotic drugs against his will "only when absolutely necessary." *United States v. Berry*, 911 F.3d 354, 357 (6th Cir. 2018). And the Federal Communications Commission may require companies to disclose certain confidential information "only if the information disclosed is absolutely necessary" to the Commission's review process. *CBS Corp. v. FCC*, 785 F.3d 699, 706 (D.C. Cir. 2015).

Moreover, as the Supreme Court has observed in the context of habeas corpus—another area of the law implicating federal-state comity—"[i]f this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102. The point of the standard rejected by the court below is to prevent unnecessary, wasteful depositions. The fact that the plaintiff in this case may not be able to meet that standard is no reason to relieve him of the responsibility.

## B. The evidence cited by the district court does not show extraordinary circumstances.

Although the district court refused to adopt a heightened standard for compelling General Reyes's deposition, it also stated that "even if the court applies the

'exceptional' or 'extraordinary' circumstances test to the facts of this case, the court still concludes that Reyes must sit for a deposition." Doc. 251 at 9. That was error. Before ordering General Reyes to be deposed, the district court should have required the plaintiff to demonstrate extraordinary circumstances, as numerous circuit courts have done. *See* Mandamus Pet. at 17-23. Amici States emphasize two flaws that would be fatal under the approach taken by these circuits: the party seeking discovery failed to show that (1) the information sought from General Reyes is essential to the case; and (2) the information cannot be obtained in any other way. *See In re U.S. Dep't of Educ.*, 25 F.4th at 702; *In re U.S.*, 197 F.3d at 314. To satisfy the first prong, the plaintiff must show that the information he seeks from General Reyes is necessary for him to make his case. To satisfy the second prong, the plaintiff must show both that General Reyes has unique knowledge of the relevant facts and that the plaintiff can obtain the information from General Reyes only through oral deposition and not through less intrusive discovery.

The district court pointed to several allegations and pieces of evidence to support its order compelling General Reyes's deposition. *See* Doc. 224 at 7-9; Doc. 251 at 9-12. Those allegations and pieces of evidence do not show that the plaintiff satisfied either prong. At most, they show that General Reyes has personal knowledge of the plaintiff's termination. Doc. 224 at 7; Doc. 251 at 9. But they do not show that General Reyes's knowledge is *unique* and cannot be obtained from any other source. Indeed, the facts to which the court referred involved communications between General Reyes and other people. *See, e.g.*, Doc. 251 at 10 (describing

13

messages allegedly exchanged between General Reyes and his campaign manager). If General Reyes in fact made those communications, then the people with whom he communicated could also supply information about the conversations and the contexts surrounding them. And if "the testimony is available from an alternate witness," exceptional circumstances justifying the deposition of a high-ranking official will exist only in "the rarest of cases." *In re FDIC*, 58 F.3d at 1062.

Moreover, even if the district court were correct that General Reyes has unique information essential to the case, it still erred in concluding that the information is available *only* through oral deposition. General Reyes and the other defendants argued that deposition by written questions would be a sufficient and less burdensome means of discovery. Doc. 251 at 12. And the court acknowledged "that some courts that have permitted high-ranking officials to be questioned have limited such questioning to written questions, concluding that such an alternative is, at least in the first instance, a sufficient, less-burdensome alternative to an oral deposition." *Id.* The court rejected that approach because, according to the court, "written questions do not enable a party to ask follow-up or clarification questions" or allow the plaintiff to assess the deponent's demeanor. *Id.* at 13. But the court did not explain why the answers to written questions could not have been used to determine whether an oral deposition was necessary. As the court recognized, it may be that General Reyes "has little knowledge" relevant to the plaintiff's claims. *Id.* In that event, written questions would suffice. Demeanor would be irrelevant.

## II.  Mandamus Is the Proper Remedy.

Having shown that the district court abused its discretion in ordering General Reyes's deposition, the defendants should receive mandamus relief. *See* Mandamus Pet. at 34-37. Most notably, requiring a high-ranking state official to refuse the deposition and be in contempt of court before challenging the deposition in an appellate court would exacerbate the federalism concerns and wasted public resources discussed above in Part I.A. *See In re U.S.*, 985 F.2d at 512 (noting "the serious implications of forcing" a high-ranking executive official "to incur a contempt sanction before granting review"). "[T]here is a marked difference between requiring a private litigant to submit to a contempt order before seeking appellate relief and requiring executive agency officials to do so." *In re SEC ex rel. Glotzer*, 374 F.3d 184, 188 (2d Cir. 2004). General Reyes should not "have to take valuable time away from other tasks in deciding whether to incur the sanction of the court." *In re U.S.*, 985 F.2d at 512. And requiring General Reyes "to fight the subpoena by placing himself in contempt . . . would harm the public perception" of Utah's highest law-enforcement officer. *Id.* Granting the defendants' mandamus petition is necessary to protect both federal-state comity and the people of Utah whom General Reyes and his office serve.

## Conclusion

The Court should grant the petition for writ of mandamus.

Respectfully submitted.

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | Judd E. Stone II<br>Solicitor General |
| Brent Webster<br>First Assistant Attorney General | Ari Cuenin<br>Deputy Solicitor General |
| | /s/ Kyle D. Highful |

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Kyle D. Highful
Assistant Solicitor General
Kyle.Highful@oag.texas.gov

Counsel for Amici Curiae

16

STEVE MARSHALL
Attorney General of Alabama

TREG R. TAYLOR
Attorney General of Alaska

LESLIE RUTLEDGE
Attorney General of Arkansas

PHIL WEISER
Attorney General of Colorado

ASHLEY MOODY
Attorney General of Florida

LAWRENCE G. WASDEN
Attorney General of Idaho

THEODORE E. ROKITA
Attorney General of Indiana

DEREK SCHMIDT
Attorney General of Kansas

DANIEL CAMERON
Attorney General of Kentucky

JEFF LANDRY
Attorney General of Louisiana

LYNN FITCH
Attorney General of Mississippi

HECTOR BALDERAS
Attorney General of New Mexico

DAVE YOST
Attorney General of Ohio

JOHN M. O'CONNOR
Attorney General of Oklahoma

ALAN WILSON
Attorney General of South Carolina

JASON S. MIYARES
Attorney General of Virginia

PATRICK MORRISEY
Attorney General of West Virginia

## CERTIFICATE OF SERVICE

On July 5, 2022, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

/s/ Kyle D. Highful
KYLE D. HIGHFUL

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 3,894 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kyle D. Highful
KYLE D. HIGHFUL